**SO ORDERED.**

**SIGNED this 14 day of July, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

PUBLISH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| TRAVIS JOE BROOKS, | ) | Case No. 09-12383 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| LINDA S. PARKS, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 10-5005 |
| | ) | |
| TRAVIS JOE BROOKS, | ) | |
| EMPRISE BANK, as Successor to | ) | |
| FIRST COMMERCIAL BANK, N.A., | ) | |
| DALE PRATHER and PATRICIA | ) | |
| PRATHER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

-1-

This case presents yet another opportunity to consider the extent of the remedies available to a trustee who has successfully avoided an unperfected security interest in the frequently-encountered situation where a lender has perfected its mortgage interest in real property but failed to perfect its lien in the manufactured or mobile home that is set on the property. Recent case law developments in the Tenth Circuit warrant another look at this oft-litigated question. Invoking her powers under 11 U.S.C. §§ 544(a) and 551, the chapter 7 trustee seeks to avoid and preserve for the bankruptcy estate Emprise Bank's unperfected lien in a mobile home that the debtor continues to occupy and claims as part of his exempt homestead.

In her Complaint, the Trustee sought to recover "either the proceeds of the Loan or the Mobile Home."[1] She further demanded judgment against the Bank and the debtor "for turnover of the Mobile Home or for any and all outstanding payments on the Loan . . . [and] for all future payments on the Loan."[2] The debtor did not file an answer, but no default judgment has been requested against him. A default judgment was entered against the defendants Prather.

The Trustee and the Bank submitted this matter to the Court on stipulated facts and briefs.[3] The Court has subject matter jurisdiction over this matter.[4] After careful consideration of the stipulations, briefs, and applicable authorities, the Court is prepared to rule.

---

[1] Dkt. 1, ¶ 13.

[2] Dkt. 1, ¶ 14.

[3] Adv. Dkt. 72. The trustee Linda Parks appeared by her attorney Scott M. Hill. Emprise Bank appeared by its attorney Karl R. Swartz. The defendants Dale and Patricia Prather did not appear and the trustee previously took default judgment against them, eliminating any interest or title the Prathers may have had in the subject property. Adv. Dkt. 46.

[4] 28 U.S.C. § 1334(b) and § 157(b)(1). These proceedings are core proceedings under 28 U.S.C. § 157(b)(2)(A), (K) and (O).

-2-

Facts

Travis Joe Brooks filed his chapter 7 bankruptcy petition on July 28, 2009. He owns a mobile home that is situated upon real property at Gas, Allen County, Kansas, which he claims as his exempt homestead. Debtor executed a promissory note in 2003 that renewed a debt in the principal amount of approximately $38,000. That note was originally secured by a mortgage in favor of First Community Bank, subsequently acquired by Emprise Bank (both lenders are referred to herein as the "Bank"). The granting clause of the mortgage states ". . . Borrower does hereby mortgage, grant and convey to Lender . . ." two tracts after whose legal descriptions appears the language, "Tract I also includes a mobile home . . . TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and *fixtures*, now or hereafter a part of the property. . . All of the foregoing is referred to in this Security Instrument as the Property."[5] It does not contain any language referring to the granting of a "security interest" per se, nor does it mention the Uniform Commercial Code. The Bank contends that it never took a lien in the mobile home because the mortgage is not a security agreement and, accordingly, argues there is no lien for the trustee to avoid and preserve.[6] The title to the mobile home was never eliminated under KAN. STAT. ANN. § 58-4214 (2005) nor did the Bank ever perfect a security interest in it under KAN. STAT. ANN. § 58-4204 (2010 Supp.).[7]

---

[5] Dkt. 72, Exhibit B.

[6] *See In re Seibold,* 351 B.R. 741 (Bankr. D. Idaho 2006) (The trustee cannot preserve a nonexistent lien; where a security agreement did not exist under applicable state law, there is nothing for the trustee to avoid.).

[7] In the absence of eliminating the title to the mobile home as provided by the statute, the Bank was required to note its lien on the certificate of title in order to perfect a security interest in the mobile home.

-3-

The Bank's mortgage covers Tract I (including the mobile home) in Gas, and Tract II in Iola, Kansas. Nothing in the stipulations tells the Court whether the debtor retains the property in Iola and nothing in the Court's file indicates that the Bank has recovered or realized upon that property or that the debtor has abandoned it. The trustee's appraiser valued the Iola tract at $5,000. The Bank accepts this value. Both parties provided appraisal evidence concerning the Gas property where the mobile home is set.[8] The Trustee's appraiser essentially "backs into" the Trustee's value by deducting his estimate of the various other components of the Bank's collateral from the Bank's debt. By comparison, the Bank's appraiser submitted two Uniform Residential Appraisal Reports, one for Tract I and the garage, and one for the whole.[9] The Bank's appraiser values Tract I and the garage at $12,800 and values Tract I, the garage, and the mobile home at $35,400. This leaves $22,600 for the mobile home. Thus, the total value of Tracts I and II, with the mobile home, is $40,400. The Bank's appraiser further concludes that the net value of the home, after removal from Tract I, is $10,500. The Court finds that the foregoing values are accurate and supported by the expert report. The Bank filed a proof of claim for $31,532, the principal amount of the note the debtor owed on the date of the petition.

These stipulated facts yield two issues: first, did the Bank take a lien in the mobile home that can be avoided and preserved by the trustee and, second, if it did, what is the trustee's remedy beyond preservation of the lien under § 551?

<u>Analysis and Conclusions of Law</u>

---

[8] Photographs included with the appraisers' reports suggest the home is set on a crawl space.

[9] Dkt. 72, Exhibit F.

-4-

*1. Did the Debtor Grant a Security Interest in the Mobile Home?*

With respect to the first issue, this matter is similar, but not identical to, the *Moore* case this Court recently decided.[10] In *Moore*, the mortgages clearly referenced taking a UCC security interest in the fixtures. The Court concluded that the bank in *Moore* had taken a lien in the fixtures, that it was not perfected, and that it could be avoided and preserved for the estate.

To determine whether the Bank has a security interest in the mobile home in this case, we look first to the Uniform Commercial Code, and, in particular, the attachment provision in KAN. STAT. ANN. § 84-9-203 (2010 Supp.). That section provides that a security interest attaches when it becomes enforceable and that a security interest becomes enforceable when three conditions have occurred.[11] First, the secured party must have given value; second, the debtor must have acquired rights in the collateral; and third, the debtor must have authenticated a security agreement that provides a description of the collateral. In this case, it is clear that the Bank advanced the debtors funds and that the debtors had rights in the mobile home at the time of the advance. Whether the debtors "authenticated a security agreement" requires further consideration.

A "security agreement" is defined in KAN. STAT. ANN. § 84-9-102(a)(72) (2010 Supp.) as "an agreement that creates or provides for a security interest." A "security interest" is defined in KAN. STAT. ANN. § 84-1-201(b)(35) (2010 Supp.) as "an interest in personal property or fixtures which secures payment or performance of an obligation." The Bank's mortgage describes the mobile home, albeit in general terms, and states the tract of real estate where it is set. Because title

---

[10] *J. Michael Morris, Trustee v. Dickinson County Bank (In re Moore),* Adv. No. 09-5157; Case No. 09-11051 (Bankr. D. Kan. Mar. 23, 2011).

[11] Section 84-9-203(a) and (b).

to the mobile home has not been eliminated as provided by statute, the mobile home is deemed personal property.[12] The mortgage is an "agreement" between the debtors and the Bank.[13] In addition to the reference to the mobile home in the granting clause, the clause that begins with the words "TOGETHER WITH," references "fixtures." "Fixtures," in turn, are defined in the Uniform Commercial Code at KAN. STAT. ANN. § 84-9-102(a)(41) (2010 Supp.) as "goods that have become so related to particular real property that an interest in them arises under real property law." The Bank's mortgage specifically grants a security interest in the mobile home and, if that is not enough, in fixtures. Finally, the mortgage is signed by the debtors and is therefore authenticated.[14] Thus, the Bank has a lien in the mobile home that the Trustee may avoid; the parties stipulate that the Bank's lien was unperfected and is therefore avoidable.

> 2. *What Remedy is Available to the Trustee Beyond Preservation of the Lien Under § 551?*

The Trustee requests not only the avoiding of the Bank's lien, but also a share of the stream of payments being received by the Bank on its note. Over a period of many years, trustees in this Court have avoided unperfected liens that encumber exempt property like cars and manufactured homes and attempted, often with success, to collect the obligations that were secured by those liens. Relying on a variety of theories, the trustees argue that merely preserving avoided liens is not sufficient to restore the estate to its pre-transfer position without the trustees being permitted to collect part of the payment stream of the underlying obligations. This Court has traditionally

---

[12] *See* KAN. STAT. ANN. § 58-4214 (2005).

[13] The Court also observes that the mortgage is referred to as a "Security Instrument." Dkt. 72, Exhibit B.

[14] KAN. STAT. ANN. § 84-9-102(a)(7) (2010 Supp.).

-6-

allowed that remedy in chapter 7 cases where the trustee successfully avoided a lien on an exempt asset that the debtor retains and continues to service the underlying debt.[15] A series of decisions in the appellate courts of the Tenth Circuit casts doubt on the availability of this remedy.

Before perusing the case law in this area, we review the applicable statutes in the Bankruptcy Code. Section 551 provides that "[a]ny transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate." Section 551 coins the "automatic preservation rule;" its effect is to place the estate automatically in the shoes of the avoided creditor (*i.e.* giving the avoided lien to the estate) and preserves the avoided lien's priority.[16] Section 550(a) provides that "the Trustee *may* recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . ." The permissive language of § 550(a) and inclusion of the terms "if the court so orders" suggest that additional remedies beyond automatic preservation of the avoided lien remedy are discretionary and not mandatory. If avoidance and preservation alone fully satisfies the estate, a § 550(a) recovery is not warranted.[17] A trustee is entitled to "only a single satisfaction" under § 550(a).[18]

The Court's study of §§ 551 and 550(a) reveals that it has been a fertile ground of discussion for the Tenth Circuit appellate courts. Several decisions speak to the rights of the bankruptcy trustee

---

[15] *See Nazar v. North American Savings Bank FSB (In re Born),* Adv. No. 05-5067; Case No. 04-14382 (Bankr. D. Kan. Mar. 2, 2006), *aff'd* 357 B.R. 630 (10th Cir. BAP 2006).

[16] *See* Hon. William L. Norton, Jr. and William L. Norton, III, 4 NORTON BANKRUPTCY LAW AND PRACTICE § 71:1 and 71:2 (3rd Ed. 2008) (hereafter "Norton's").

[17] Norton's cites the avoidance of a lien as such a situation. *See* 4 Norton's, § 70:3.

[18] Section 550(d).

-7-

upon successfully avoiding a lien. The Court reviews the progression of those cases leading up to and culminating with the Tenth Circuit Court of Appeals' most recent pronouncement in *Trout*.[19]

In *In re Rubia*,[20] the Tenth Circuit Bankruptcy Appellate Panel (BAP) addressed whether a trustee who avoided an unperfected vehicle lien could force the lender who continued to receive payments post-petition to turn them over as part of his remedies. In *Rubia*, the debtor borrowed money on his 1994 Ford Ranger truck. The debtor claimed the truck as his exempt means of conveyance under Kansas law[21] and continued to make his loan payments to the credit union even after he filed his bankruptcy. After the trustee sued to avoid the credit union's lien, the credit union agreed that the lien should be avoided, but continued to contest the trustee's claim that he should also recover the post-petition payments. The bankruptcy court sided with the lender and the trustee appealed to the BAP. There the BAP held that the avoidance of the credit union's lien merely meant that the credit union could no longer look to the truck to satisfy its debt. Any payments it had received were to be credited against its now unsecured claim. The value of the trustee's lien was limited to the amount of the credit union's debt that the lien formerly secured as of the petition date.[22] With regard to what the trustee could collect from the debtor, the BAP majority stated unequivocally–

---

[19] *Rodriguez v. Drive Financial Services, L.P. (In re Trout),* 609 F.3d 1106 (10th Cir. 2010).

[20] *Morris v. Vulcan Chemical Credit Union (In re Rubia)*, 275 B.R. 324 (10th Cir. BAP 2001), *aff'd sub nom. In re Rubia*, 23 Fed. Appx. 968 (10th Cir. Dec. 12, 2001).

[21] *See* KAN. STAT. ANN. § 60-2304(b) (2005).

[22] 275 B.R. at 328.

> However, absent an agreement between the Trustee and the debtor requiring the debtor to pay for the Ranger, *the Trustee has no right to collect anything from the debtor inasmuch as the Trustee's rights are solely in the Ranger.*[23]

Thus, *Rubia* stands for the rule that the recovery of a trustee avoiding a non-possessory lien is limited to the collateralized property, up to the amount of the debtor's debt to the lienholder on the date of filing, and does not include any right to payments made by the debtor. The Tenth Circuit affirmed the BAP's decision in an unreported order.

The BAP next addressed avoidance and recovery issues in *In re Born*.[24] In that case, the debtor retained and continued to make payments on his mobile home even though the trustee successfully avoided the lender's lien on it. The trustee attempted to value the preserved lien as a multiple of the lender's pre-petition debt rather than the value of the mobile home itself. Instead, this Court ordered that the trustee be permitted to recover a share of each payment the debtor made based upon the value of the mobile home relative to the value of the home and the real estate it occupied.[25] While the BAP referred to this means of realization as "novel," it noted that the payment division was not at issue on appeal and "offer[ed] no opinion as to whether a trustee or a lender could be compelled to accept such payments in lieu of more traditional means of lien foreclosure or satisfaction."[26] Instead, the BAP focused on the issue of the value the trustee could recover and concluded that when a trustee avoids a lien, he has an interest in the property that is subject to it and

---

[23] *Id.* at 328-29.

[24] *Nazar v. North American Savings Bank, et al., (In re Born),* 357 B.R. 630 (10th Cir. BAP 2006).

[25] *Nazar v. North American Savings Bank, et al., (In re Born),* Adv. No. 05-5067; Case No. 04-14382 (Bankr. D. Kan. Mar. 2, 2006), Adv. Dkt. 33, Memorandum Op. at 6-7.

[26] 357 B.R. at 632.

-9-

not in the underlying debt or any stream of payments it might generate. Therefore, the trustee's recovery, if any, is limited to the value of the property or the debt, whichever is less.

Next, in *Haberman*, the Tenth Circuit Court of Appeals squarely considered whether the automatic preservation of a lien under § 551 gives the trustee the right to collect the debt that the avoided lien secures or whether the trustee's right of recovery is limited to the value of the collateral.[27] In *Haberman*, the debtors borrowed approximately $3,000 from a bank to buy a computer. To secure repayment of the note, the bank took a security interest in the debtors' 1980 Pontiac. Unfortunately, the bank did not properly perfect its lien and the trustee avoided it using his hypothetical lien creditor powers under § 544. In the course of the trustee's adversary proceeding, the bankruptcy court authorized the bank to continue to collect payments, subject to the surrender of some of the collected funds should the trustee prevail. While the adversary proceeding progressed, the debtors paid off the note. What they paid exceeded the value of the car by $1,000. When the trustee won the lien's avoidance, he sought to recover all of the payments the debtors had made, not just the car's value, and asserted that when he avoided the lien, he succeeded not only to the lien itself, but also the contractual payment obligations that it secured. The bankruptcy court granted judgment for only the value of the car at the petition date and the trustee appealed. The BAP affirmed and the trustee appealed their order to the Tenth Circuit.

The Circuit Court framed the issue as whether, upon avoidance, the trustee recovers the avoided lien or its value or the actual amount of the creditor's note. It held that § 551 operates to preserve the avoided lien, not any other rights that the lien holder may have had. The court relied on § 551's express language preserving liens and transfers, but not contractual promises for future

---

[27] *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207 (10th Cir. 2008).

-10-

payments, to hold that upon avoidance, the trustee does not "become" the creditor.[28] Rather, he only succeeds to the property interest that was avoided. Thus in *Haberman*, the Tenth Circuit held that the trustee could only recover the $2,000 value of the car instead of all of the payments collected by the Bank.

That left the question of whether § 550(a)'s recovery provisions require the bankruptcy court to allow a trustee to recover the "value" of an avoided lien in addition to its preservation. The Tenth Circuit answered in the negative in *In re Trout*.[29] In that case, a trustee had avoided the unperfected purchase money security interest a lender took in motor vehicles. The bankruptcy court denied the trustee's demand for a money judgment for the value of the vehicles as of the petition date and instead concluded that preserving the avoided lien for the estate's benefit was sufficient. The BAP and Tenth Circuit affirmed.

The Tenth Circuit concluded that relief under § 550(a) is not automatic and, as it previously held in *Haberman*, that a trustee avoiding a creditor's non-possessory lien steps into the creditor's shoes with the same rights in the collateralized property that the lienholder formerly held.[30] If preserving the lien makes the estate whole, allowing a judgment against the lienholder under §550(a) would afford the trustee the second satisfaction that is barred by § 550(d). Instead, according to *Trout*, § 550(a) allows the court to fashion a remedy that returns the estate to its pre-transfer position. Only when the collateral has already been realized upon, or it is unrecoverable for some reason, should the court consider an award of its value as opposed to the mere preservation of the

---

[28] *Id.* at 1211.

[29] *Rodriguez v. Drive Financial Services, L.P. (In re Trout),* 609 F.3d 1106 (10th Cir. 2010).

[30] 609 F.3d at 1009, citing *Haberman*, 516 F.3d at 1210.

-11-

Case 10-05005    Doc# 75    Filed 07/14/11    Page 11 of 15

lien.[31]

Distilling the rules in these four cases, the Court concludes that nothing in the bankruptcy code authorizes the Trustee to collect the underlying debts or allows her to "become the creditor" as the trustee alleged in *Rubia*. Whatever the Trustee may recover is limited by the lesser of the underlying debt as allowed in *Rubia* or the value of the collateral of the avoided lien as found in *Born*. *Haberman* establishes that § 551 preserves for the estate only the former lienholder's interest in the collateralized property, leaving the former lienholder's contractual rights to payment undisturbed. Finally, *Trout* holds that § 550(a) does not mandate that the trustee receive the value of an avoided lien, but rather provides the bankruptcy court with the discretion to fashion relief that places the estate in the position it would have occupied had the avoided transfer not occurred. This is the touchstone: what is necessary to replace the estate in its pre-transfer position? The scope of relief can be as narrow as mere preservation of the lien under § 551 or, in appropriate circumstances, as broad as a money judgment against the former lienholder for the value of the collateral if the collateral is not otherwise recoverable under § 550(a). All four decisions make it very clear that, in the absence of some sort of agreement with the debtor, the trustee does not have the right to enforce the lienholder's right to collect the note payments. What then should Trustee Parks expect to recover in respect of her avoided lien in the debtor's mobile home in this case?

As noted in the findings of fact, the Court has concluded that the mobile home was worth $22,600 at the petition date. The entirety of the mortgaged property has a value of $40,400. The Tract II property contributes $5,000, or 12.38 percent of the total value while the Tract I real

---

[31] 609 F.3d at 1111-13. The Circuit Court expressly rejected circumstances where the collateral for the lien is diminishing in value as a basis for awarding the value of the avoided lien under § 550(a). *Id.* at 1112.

-12-

property and garage contribute $12,800 or 31.68 percent. The mobile home therefore contributes 55.94 percent of the total value. The Bank's claim amounts to $31,532 as of the date of filing. Because the debtor intends to remain in the homestead, the Court values the mobile home as it is currently used, rather than as if the Trustee removed it. The Court therefore concludes that the value of the Trustee's avoided and preserved lien in the mobile home at Gas is not more than 55.94 percent of the Bank's pre-petition debt, or $17,639, and that the Trustee may not recover more than that amount in realizing upon her lien. The Bank's secured claim is therefore reduced in a like amount to $13,893 and a corresponding unsecured claim in the amount of $17,639 is allowed. The Bank's remaining secured claim is secured by the Tract I real property and garage and the Tract II real property.

This is not an appropriate case for the Trustee to recover the value of the avoided lien under § 550(a) because preserving the avoided lien is itself sufficient to make the estate whole.[32] None of the circumstances that might justify allowing recovery of the value of the lien rather than its preservation are present here. The debtors remain in their homestead and continue to pay the Bank their note payment. The mobile home has not been repossessed, foreclosed upon, or destroyed. The Trustee has no right to possess the mobile home because the debtors have claimed it as part of their exempt homestead. Had the mobile home been repossessed, foreclosed upon, sold or destroyed, the Trustee would, under *Trout*'s reasoning, have a cognizable claim for recovery of the value of the mobile home.[33] Allocating a portion of the payments to the estate as the Trustee requests is the same

---

[32] The Trustee may obtain the avoided and preserved lien or the value of the avoided lien, but not both. *See Trout, supra* at 1108, n. 2; § 550(d).

[33] *See Tidwell v. Chrysler Credit Corp. (In re Blackburn)*, 90 B.R. 569, 573 (Bankr. M.D. Ga. 1987)(vehicle repossessed pre-petition and sold to good faith purchaser) and *Morris v.*

-13-

as granting the Trustee a money judgment against the Bank for its value. Because no circumstances exist that would warrant that result, the Trustee's request for that relief should be denied. Preservation of the lien under § 551 places this estate in the position it occupied before the lien was granted.

In so holding, the Court recognizes its prior decision in *Born* where it authorized the recovery of allocated payments to address the lien interests of both the bank (as to the land) and the trustee (as to the home).[34] The Court concludes that awarding this form of relief in the absence of the circumstances identified by the Tenth Circuit in *Trout* is no longer appropriate.[35] The Court also recognizes that a preserved lien in a mobile home, by itself, may not have the immediate liquid value that the Trustee anticipated receiving from the prorated payment stream. Prudent business judgment requires that trustees evaluate case by case whether avoiding and preserving liens of this type sufficiently benefits the creditors of their various estates to justify those actions.[36]

Judgment should therefore be entered for the Trustee avoiding and preserving for the estate

---

*Kan. Drywall Supply Co., Inc. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 877 (D. Kan. 1991) (supplier removed merchandise from warehouse and sold a portion of it).

[34] *Nazar v. North American Savings Bank FSB (In re Born),* Adv. No. 05-5067; Case No. 04-14382 (Bankr. D. Kan. Mar. 2, 2006), *aff'd* 357 B.R. 630 (10th Cir. BAP 2006). In examining the relief awarded to the trustee, the BAP stated: "While this method of realization upon an avoided lien seems somewhat novel, it is not at issue in this appeal. Bank does not contest the forced allocation of payments. We offer no opinion as to whether a trustee . . . could be compelled to accept such payments in lieu of more traditional means of lien foreclosure or satisfaction." 357 B.R. at 632.

[35] The Court notes that *Born* was neither mentioned nor discussed in *Trout*.

[36] While it does not bear on the issue at hand, the Court takes note that the Trustee has pursued the remedy of avoiding a $17,639 lien in an attempt to pay an unsecured claim pool of $639. *See* Claims Register, Case No. 09-12383. This leads the Court to wonder how litigation of this magnitude was justified and, further, how compensating Trustee's counsel for pursuing this litigation can be justified in light of the economy of this case.

the Bank's security interest in the mobile home at Gas, Kansas, up to the amount of $17,639. The Bank is allowed an unsecured claim in the amount of $17,639. The Trustee's request for the value of the avoided lien by recovery of a pro-rated share of debtor's note payments is denied. A judgment on decision will issue this day.

# # #